IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Adams Outdoor Advertising Limited Partnership, | Case No. 0:21-cv-03732-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| York County; Rachel Grothe, *York County Zoning and Development Standards Administrator*; Josh Reinhardt, *York County Development Services Manager*, | |
| Defendants. | |

This matter is before the Court on Plaintiff's motion for summary judgment [Doc. 88] and Defendants' motion for reconsideration [Doc. 90] in this case raising various constitutional challenges to a sign ordinance enacted by Defendant York County (the "County").

## BACKGROUND

Plaintiff is a limited partnership engaged in the outdoor advertising business, including the sale and lease of billboard space and the securement of real property and property rights for advertising purposes. [Doc. 1 ¶¶ 2, 13.]

**The County's Sign Ordinance and Its Application to Plaintiff**

On September 1, 2021, Plaintiff submitted to the County's planning department 11 permit applications to convert certain static billboards into digital billboards. [Docs. 53-5; 54-4 at 2.] At the time Plaintiff submitted its applications, the County had several

ordinances governing several types of signs (collectively, the "Sign Ordinance"). [Doc. 54-2 at 63–88.]  Most relevant to this action is the Sign Ordinance's regulation of "[o]utdoor advertising displays" ("OADs") in Sign Ordinance § 155.474(B).  [*Id.* at 66.]  The Sign Ordinance expressly prohibits any OAD, which it defines as "[a] structure which advertises, attracts attention to, or directs persons to a business activity located on other than the premises where the structure is erected.  Nationally advertised products or services will not be deemed to be located on or carried on at the premises of local retail outlet or branch office."  [*Id.* at 64, 66 (Sign Ordinance §§ 155.471, 155.474(B)).].  Nonetheless, § 155.480(D)(1) provides that "[s]ubject to the provisions and amortization requirements of this section, nonconforming [OADs] may be maintained after May 21, 1991, provided that . . . [a] nonconforming [OAD] cannot be enlarged, extended, relocated, structurally reconstructed or altered in any way, except that a sign face can be changed, provided that there is no increase in the face area, height or projection."  [*Id.* at 72–73.]

Each of the 11 signs that Plaintiff sought permits to convert to a digital billboard was a nonconforming OAD and thus the Sign Ordinance did not allow its conversion from static to digital, absent the application of one of several exemptions contained in the Sign Ordinance—none of which the parties contend applied to Plaintiff's applications. [Doc. 53-6.]  Defendant Josh Reinhardt, in his capacity as the development services manager, advised Plaintiff by email dated September 1, 2021, that the County was "unable to process" Plaintiff's permit applications.  [*Id.*]

The Sign Ordinance is no longer in effect.  [*See* Doc. 54-1 at 1 n.1.]  The County engaged in an extensive process of rewriting its zoning ordinances from 2019 through

2022, and the new ordinances (collectively, the "Amended Sign Ordinance") became effective March 1, 2022. [Docs. 53-3 at 11; 54-2 at 89–90.]

**This Action**

On November 15, 2021, Plaintiff filed the instant action, challenging the Sign Ordinance under various provisions of the South Carolina and United States Constitutions. [Doc. 1.] The Complaint alleged five causes of action: (1) a facial challenge to the constitutionality of the Sign Ordinance as a content-based restriction on speech [*id.* ¶¶ 44–87]; (2) a facial challenge to the constitutionality of the Sign Ordinance on the grounds that it is vague, ambiguous, and/or overbroad [*id.* ¶¶ 88–136]; (3) a facial challenge to the constitutionality of the Sign Ordinance as a prior restraint on speech [*id.* ¶¶ 137–50]; (4) a facial challenge to the constitutionality of the Sign Ordinance as a violation of equal protection and/or substantive due process [*id.* ¶¶ 151–61]; and (5) a challenge to the constitutionality of the Sign Ordinance as it was applied to Plaintiff [*id.* ¶¶ 162–76]. The Complaint requested money damages, declaratory and injunctive relief, costs and attorneys' fees, and any other appropriate relief. [*Id.* at 44–45.]

On January 22, 2025, the Court issued an Order (the "Summary Judgment Order") dismissing four of Plaintiff's five claims. [Doc. 84.] Regarding the remaining claim, Plaintiff's facial challenge to the constitutionality of the Sign Ordinance as a content-based restriction on speech, the Court granted summary judgment to Plaintiff. [Doc. 84 at 15–26.] The Court also granted summary judgment to Defendants as to any claim for actual or compensatory damages and dismissed all claims for prospective declaratory and injunctive relief. [*Id.* at 11–13, 26–28.]

On January 29, 2025, the parties filed a joint status report advising the Court that Plaintiff intended to file a separate motion for summary judgment on the issue of the remedy to which it is entitled for its facial challenge. [Doc. 86.] Plaintiff filed that motion on February 13, 2025 (the "Remedy Motion"), and on March 10 and 17, Defendants filed a response and Plaintiff filed a reply. [Docs. 88; 95; 96.] Additionally, on February 19, 2025, Defendants filed a motion for reconsideration of the Summary Judgment Order. [Doc. 90.] On March 27 and April 3, Plaintiff filed a response and Defendants filed a reply. [Docs. 97; 98.] Both motions are ripe for review.

## DISCUSSION

**Defendants' Motion for Reconsideration**

Rule 54(b) of the Federal Rules of Civil Procedure governs the Court's reconsideration of interlocutory orders. Fed. R. Civ. P. 54(b). Where a district court issues an interlocutory order such as one for partial summary judgment "that adjudicates fewer than all the claims," the court retains discretion to revise such an order "at any time before the entry of a judgment adjudicating all the claims." *Id*. "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) . . ., Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). The discretion Rule 54(b) provides, however, is not limitless. *Id*. "[C]ourts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id*. "The law-of-the case doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id*. (internal

4

quotation marks omitted). "Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id*. (cleaned up). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id*. (internal quotation marks omitted).

In this case, Defendants do not contend that there has been different evidence discovered during litigation or a change in applicable law. Rather, Defendants argue, for several reasons, that the Court committed clear error causing manifest injustice. The Court concludes that Defendants have not satisfied the Rule 54(b) standard with regard to any of the errors they allege. Accordingly, Defendants' motion for reconsideration is denied.

**The Remedy Motion**

In the Remedy Motion, Plaintiff argues that the effect of the unconstitutional denial of its 11 permit applications is that it "has been unconstitutionally prohibited from converting 11 of its sign faces from static displays to digital displays," thereby violating its "rights to a channel of communication to express speech and disseminate information." [Doc. 89 at 6.] Plaintiff therefore maintains that the appropriate remedy for the constitutional violation would be for the Court to order the County to issue the permits that it had no constitutional basis for denying in 2021. [*Id.* at 5–13; *see* Doc. 80 at 1 ("[W]ithout waiving actual and nominal damages, Plaintiff's injuries would be redressed through its

5

request for a declaration that, due to the ordinance's unconstitutionality and resulting invalidity at the relevant times of permit application and local government response, [the County] must issue the applied-for permits to [Plaintiff] because no valid regulation existed under which it could have denied the applications.").] The Court agrees.[1]

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (internal quotation marks omitted). Even if the plaintiff makes such a showing, the determination of whether to grant the injunction remains in the district court's discretion. *Id.*

As this Court has determined, the County's refusal in 2021 to issue the 11 permits Plaintiff applied for infringed upon Plaintiff's First Amendment free-speech rights. [Doc. 84 at 15–26; *see also id.* at 12 n.6.] "[I]t is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

---

[1] Defendants contend that Plaintiff never pled nor raised a claim for a mandatory injunction prior to raising it in the Remedy Motion. [Doc. 95 at 6–10.] However, except for in a default judgment, "the relief to which a claimant is entitled is not limited to the relief it requested in its original demand for judgment." *Gilbane Bldg. Co v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996) (citing Fed. R. Civ. P. 54(c)). Moreover, the Complaint included a request that the Court "declare that the Zoning Administrator must issue all of the sign permits requested by" Plaintiff. [Doc. 1 at 45 ¶ j.] Given the nature of what was sought, that language satisfactorily conveyed to Defendants that Plaintiff was requesting that the Court order the County to issue the permits. *Cf. Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 (4th Cir. 1983) ("A party will not be given relief not specified in its complaint where the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief." (internal quotation marks omitted)).

6

irreparable injury." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (cleaned up).  And, "monetary damages are inadequate to compensate for the loss of First Amendment freedoms." *Id.*  As for the third requirement, Plaintiff has wrongfully been denied the right to convert its billboards to digital for nearly four years, whereas the County "is in no way harmed by issuance of an injunction that prevents" the County from continuing and compounding the injury caused by its unconstitutional denial of the permit applications, *id.* at 302–03.  Finally, Plaintiff has satisfied the fourth requirement because "upholding constitutional rights is in the public interest."  *Id.* at 303.  Given Plaintiff's satisfaction of all four requirements, the Court concludes that it should not have to wait any longer to exercise its free-speech rights and thus an injunction requiring issuance of the permits Plaintiff applied for is the appropriate remedy.[2]  *See Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th Cir. 2005) ("[A]n injunction requiring the issuance of a permit ordinarily is a proper remedy when a governmental body has denied a permit without substantial evidence supporting the

---

[2] To the extent that Defendants question whether Plaintiff's entitlement to such relief continues to present a live controversy [Doc. 95 at 5–6], the Court concludes that it plainly does.  Plaintiff's injury from being wrongly prevented from converting its billboards to digital, would be remedied—at least partially—by ordering that Plaintiff be allowed to convert them now.

The Court also notes that Defendants contend that the Court should decline to issue an award of attorneys' fees and costs to Plaintiff because Plaintiff did not file affidavits or other exhibits, including time, billing, and cost records, with the present summary judgment motion.  [Doc. 95 at 13–14.]  The Court disagrees.  Under 42 U.S.C. § 1988(b), the "prevailing party" in a § 1983 action may obtain reasonable attorneys' fees.  Pursuant to Rule 54(d)(2)(B)(i) of the Federal Rules of Civil Procedure, a motion for attorneys' fees with the information outlined by Defendants must be filed within 14 days of the judgment.  Accordingly, Plaintiff had no obligation to attach such a motion to its Remedy Petition.

denial."); *S. Utah Drag Stars v. City of St. George*, 677 F. Supp. 3d 1252, 1277, 1297 (D. Utah 2023) (ordering a municipality to reverse its unconstitutional denial of a special event permit and issue a permit allowing the plaintiffs to hold their event on a particular later date).

Defendants contend that application of the pending ordinance doctrine precludes the Court from ordering issuance of the 11 permits. [Doc. 95 at 12–13.] Underlying this argument is Defendants' position that had Plaintiff's applications been considered under the *Amended* Sign Ordinance, they would have been properly denied. [*Id.*] Plaintiff does not appear to dispute that its applications would have been properly denied under the Amended Sign Ordinance. However, Plaintiff nevertheless argues that Defendants have not forecasted evidence creating a genuine dispute of material fact concerning whether the pending ordinance doctrine applies. [Doc. 80 at 13–14; 96 at 13–14.]

Under the pending ordinance doctrine, "a municipality may properly refuse a building permit for a land use in a newly annexed area when such use is repugnant to a pending and later enacted zoning ordinance." *Sherman v. Reavis*, 257 S.E.2d 735, 737 (S.C. 1979). As the *Sherman* court explained:

> It would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew or could have known would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted.

8

*Id.* (internal quotation marks omitted).  The court explained that the municipality need not already have held a hearing on the later ordinance for the ordinance to be considered legally pending.  *Id.*  Rather, "[a]n ordinance is legally pending when the governing body has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning."  *Id.*; *see Adams Outdoor Advertising Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 562–63 (4th Cir. 2024).

Here, Defendants, citing a timeline of events concerning the Amended Sign Ordinance, claim that, "[p]rior to September 1, 2021[—when Plaintiff submitted its permit applications—County Council] had clearly 'resolved to consider' the [Amended Sign Ordinance] and had also 'advertised to the public its intention to hold public hearings' on it."  [Doc. 95 at 13 (citing Doc. 54-2 at 89–90).]  But Defendants offer no explanation for how the cited timeline supports this cursory assertion.  As Plaintiff points out, and as the timeline establishes, the York County Council (the "County Council") did not give first reading to the Amended Sign Ordinance until December 6, 2021, more than three months after Plaintiff's applications had already been acted upon.  [Doc. 54-2 at 90.]  Nor have Defendants forecasted evidence on the second requirement, that the County Council had advertised to the public to hold a hearing on the Amended Sign Ordinance.  *Cf. Adams Outdoor Advertising Ltd. P'ship*, 105 F.4th at 563 (holding that the county council had "resolved to consider" an ordinance, within the context of the pending ordinance doctrine, at the ordinance's first reading).  Accordingly, Defendants have failed to create a genuine dispute of material fact regarding whether the pending ordinance doctrine applies.[3]  *See*

---

[3] Because the Court concludes for these reasons that the pending ordinance doctrine does not preclude the relief requested, the Court does not address Plaintiff's alternative arguments concerning the doctrine.

9

Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## **CONCLUSION**

For these reasons, Defendants' motion for reconsideration [Doc. 90] is DENIED, and Plaintiff's motion for summary judgment [Doc. 88] is GRANTED. York County is ORDERED to issue the 11 permits for which Plaintiff applied with all deliberate speed, and in any event no later than 21 days of the entry of this Order.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

June 16, 2025
Columbia, South Carolina